IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Darryl Fleming (#N-91449), | ) | |
|---|---|---|
| Plaintiff, | ) | Case No. 16 CV 50074 |
| v. | ) | |
| | ) | Judge Philip G. Reinhard |
| Illinois Department of Corr., et al., | ) | |
| Defendants. | ) | |

## ORDER

For the following reasons, defendants' motion for summary judgment [37] is denied.

## STATEMENT- OPINION

Plaintiff Darryl Fleming, an Illinois state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendants, supervisory officials and tactical team officers for the Illinois Department of Corrections, violated plaintiff's constitutional rights by conducting an unreasonably harsh and abusive, prison-wide shakedown at the Dixon Correctional Center. Plaintiff alleges that defendants (1) deprived him of equal protection; (2) carried out the search in an unreasonable manner; and (3) acted with deliberate indifference to his medical needs. This matter is before the court for ruling on defendants' early motion for partial summary judgment on the basis of failure to exhaust administrative remedies as to all claims raised. For the following reasons, defendants' motion for summary judgment [37] is denied.

### I. SUMMARY JUDGMENT STANDARD

"The Court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hanover Ins. Co. v. Northern Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014). In determining whether there are factual questions, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986)). A hearing under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) is necessary only when there are disputed issues of fact that require further inquiry. *Id.* at 742.

## II. NORTHERN DISTRICT OF ILLINOIS LOCAL RULE 56.1

"Under the Local Rules of the Northern District of Illinois, a party filing a motion for summary judgment under Fed. R. Civ. P. 56 must serve and file 'a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law.'" *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008) (quoting *Koszola v. Bd. of Educ. of City of Chicago,* 385 F.3d 1104, 1107-08 (7th Cir. 2004)). The opposing party must then "file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (citing L.R. 56.1(b)(3)(B) (N.D. Ill.)); *Fabiyi v. McDonald's Corp.*, No. 11 CV 8085, 2014 WL 985415, at *1 (N.D. Ill. Mar. 13, 2014) (Kim, Mag. J.) (*aff'd* 595 F. App'x 621 (7th Cir. 2014)). The opposing party may also present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). A plaintiff's *pro se* status does not excuse him from complying with these rules. *Morrow v. Donahoe*, 564 F. App'x 859, 860 (7th Cir. 2014) (unpublished opinion) (citing *Pearle Vision, Inc. v. Romm,* 541 F.3d 751, 758 (7th Cir. 2008) (inter alia)).

Consistent with the Local Rules, defendants filed a Statement of Material Facts along with their motion for summary judgment. *See* [39]. Each substantive assertion of fact in Defendants' Local Rule 56.1(a)(3) Statement is supported by evidentiary material in the record. Also in accordance with the Local Rules, defendants filed and served on plaintiff a Local Rule 56.2 Notice, which explained in detail the requirements of Local Rule 56.1. *See* [40]. The notice warned plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *see also Sykes v. Dart*, No. 12 CV 4447, 2014 WL 5611466, at *5 (N.D. Ill. Nov. 4, 2014) (Chang, J.) (advising plaintiff that his failure to respond to a motion for summary judgment rendered defendants' statement of facts admitted). Despite these admonitions, plaintiff failed to comply with the court's Local Rules governing summary judgment. Consequently, the court has discretion to adopt defendants' Statement of Facts in its entirety.

Nevertheless, notwithstanding plaintiff's non-compliant response to defendants' motion for summary judgment, the court finds that defendants are not entitled to judgment as a matter of law. The court is satisfied that plaintiff's grievance and amended grievance served their required purpose. Accordingly, defendant's motion for partial summary judgment on the ground of non-exhaustion is denied.

## III. RELEVANT FACTS

Plaintiff Darryl Fleming is an Illinois state prisoner, incarcerated at the Dixon Correctional Center. Defendants Chad Jenkins and Scott Meyers are Dixon correctional officers. At the time of the events giving rise to his lawsuit, defendant Nedra Chandler was the facility's Warden. During the relevant time period, defendants Donald Stolworthy and Joseph Yurkovich

were, respectively, the Director of the Illinois Department of Corrections ("IDOC") and IDOC's Chief of Operations.

The following facts, all supported by the record, are undisputed for purposes of the summary judgment motion:

On April 21, 2014, Dixon's tactical team conducted a search at the Dixon Correctional Center. The tactical team was outfitted in full riot gear. Face shields covered the officers' faces, and they wore no name tags.

Tactical team officers instructed the inmates to "get asshole naked." The inmates then had to stand naked in front of officers of both sexes, lift their genitals for a visual inspection, open their mouths, spread their fingers, and show the bottoms of their feet. The officers then ordered the inmates to line up in pairs in the facility's gymnasium and submit to being shackled.

Plaintiff was required to remain standing in a "stress position" for several hours even though he told the officers that he was suffering from a headache, dizziness, and back pain, and that the overly tight handcuffs were cutting off his circulation. Plaintiff was required to eat breakfast while handcuffed. Plaintiff endured pain and bruising from the handcuffs.

After breakfast, defendants Meyer and Jenkins escorted plaintiff and fellow inmates to a lavatory. The officers refused to loosen or remove plaintiff's handcuffs so that he could use his hands. Plaintiff was unable to use toilet tissue, and he smeared malodorous feces on his clothing and handcuffs. He was allowed only to wash his hands. Plaintiff later learned that the same officers unshackled a Caucasian inmate who was in the gym at the same time as plaintiff and who needed to use the washroom.

Plaintiff filed a grievance on April 21, 2014. *See* [53] at 11-12. The grievance related only to plaintiff's "humiliating" bathroom experience, and the purportedly preferential treatment of the white inmate. *Id.*

Plaintiff submitted a 3-page, follow-up grievance on May 27, 2014. *See id.* at [11]. The second grievance went into greater detail about the prison-wide lockdown and search. Plaintiff mentioned the non-emergency nature of the tactical team exercise, the fact that inmates were strip-searched and forced to stand outside in "chilly cold" weather, and that they had to stand in formation for hours. Plaintiff also reiterated his outrage over what had occurred in the restroom. *Id.* at 13-14. Plaintiff additionally stated on the form, "I told the tact team Officer that I have a Rod in my Rt leg and that It would be painful for me to stand for long periods." *Id.* at 14.[1] Plaintiff went on to say that the shakedown had left his cell in a "shambles," as if an

---

[1] The single statement in the grievance concerning plaintiff's medical issue looks to have been added as an afterthought. Plaintiff appears to have used a different writing instrument for that sentence; in addition, plaintiff left no blank space between paragraphs at that spot, as he did between other paragraphs. However, defendants have not challenged the validity of that insertion into the grievance. The court will therefore assume that plaintiff added the language before submitting it to his counselor, and not in preparation for this lawsuit.

3

"earthquake" had occurred, and that some of his personal property was missing or damaged, among other concerns. *Id.* at 15.

## IV. ANALYSIS

Defendants do not contest that plaintiff exhausted administrative remedies in connection with his equal protection claim. Defendants challenge only whether plaintiff's grievances sufficiently touched upon his medical claim and the overall reasonableness of the search to satisfy the exhaustion requirement. The court finds as a matter of law that plaintiff exhausted administrative remedies as to all three claims. Accordingly, defendants' motion for partial summary judgment is denied.

The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a); *see also Jones v. Bock*, 549 U.S. 199, 204 (2007); *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Howard v. Maselko*, No. 11 CV 9278, 2013 WL 1707955, at *2 (N.D. Ill. Apr. 19, 2013) (Kocoras, J.). Correctional officials bear the burden of pleading and proving failure to exhaust. *Maddox*, 655 F.3d at 720 (citing *See Jones,* 549 U.S. at 212).

In order to satisfy the PLRA's exhaustion requirement, a prisoner "must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). An inmate must comply with the rules established by the State with respect to the form, timeliness, and content of grievances. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002). "Administrative remedies have not been exhausted unless the inmate has given the process a chance to work and followed through with administrative appeals." *Worthem v. Boyle*, 404 Fed. App'x 45, 46, 2010 WL 4683631, at *2 (7th Cir. Nov. 18, 2010) (unpublished opinion) (citing *Ford*, 362 F.3d at 398-400; *Dixon v. Page*, 291 F.3d 485, 490-91 (7th Cir. 2002)). "The 'applicable procedural rules' that a prisoner must properly exhaust are defined not by the PLRA, but by the prison grievance process itself. *Maddox*, 655 F.3d at 721 (citing *Jones,* 549 U.S. at 218). In this circuit, the courts take a "strict compliance approach to exhaustion." *Maddox*, 655 F.3d at 720 (quoting *Dole v. Chandler,* 438 F.3d 804, 808 (7th Cir. 2006)). Thus, "[a] prisoner must properly use the prison's grievance process. If he or she fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Maddox*, 655 F.3d at 720 (quoting *Dole,* 438 F.3d at 804). If a prisoner fails to properly avail himself of the prison's or jail's grievance process, he may lose his right to sue. *Massey*, 196 F.3d at 733; *Howard*, 2013 WL 1707955, at *2.

Defendants do not contend that plaintiff failed to comply with IDOC's three-step grievance process. *See* 20 Ill. Admin. Code §§ 504.800, *et seq.* (detailing grievance procedures); *see also Burrell v. Powers,* 431 F.3d 282, 284 (7th Cir. 2005) (likewise explaining the administrative exhaustion process). "[A] procedural shortcoming like failing to follow the

prison's time deadlines amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Maddox*, 655 F.3d at 722 (quoting *Conyers v. Abitz,* 416 F.3d 580, 585 (7th Cir. 2005)). Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense. *See Maddox*, 655 F.3d at 722 (citing *Conyers,* 416 F.3d at 585*; see also Riccardo v. Rausch,* 375 F.3d 521, 524 (7th Cir. 2004) ("[W]hen a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action"); *Ford,* 362 F.3d at 398 (ruling that by deciding prisoner's grievance without invoking a forfeiture doctrine, the Administrative Review Board effectively established that the prisoner had exhausted his state remedies). Here, plaintiff's compliance with the grievance process is not in question.

Furthermore, plaintiff's grievance sufficiently alerted correctional officials that tactical team officers had conducted the strip search in an unreasonable manner. "Grievances are intended to allow prisons to address complaints about the program it administers before being subjected to suit, reduce litigation to the extent complaints are satisfactorily resolved, and improve litigation that does occur by leading to the preparation of a useful record." *Maddox*, 655 F.3d at 720 (citing *Jones,* 549 U.S. at 219) (internal punctuation omitted). The Illinois Administrative Code requires that the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill. Admin. Code § 504.810(b); *see also* language on plaintiff's grievance forms ("Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved")).

In the case at bar, plaintiff used extra pages in his second grievance to specify the perceived mistreatment with which he took issue. Plaintiff noted that there was no emergency, that the inmates were strip-searched, that they had to stand outside in the cold for a long time with insufficient clothes, that the inmates were required to maintain a standing "stress position," and that the tactical team conducted an unnecessarily destructive cell search. He also explained his inability to identify the tactical team officers: he said that they wore face shields and wore no name tags. That information was enough to satisfy the notice function of the grievances. *Compare Maddox*, 655 F.3d at 722 (prisoner's failure to name the defendants in the grievance was a "mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement") (citing *Jones,* 549 U.S. at 219) (providing early notice to those who might later be sued has not been thought to be one of the leading purposes of the exhaustion requirement) (in turn, citing *Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation")). It does not matter that plaintiff's grievance did not go into such particulars as having to stand naked in front of officers of both sexes, or having to lift his genitals. Plaintiff's grievance established his basic objections to the manner in which correctional officials conducted the lockdown and search.

Although a somewhat closer call, the court concludes that plaintiff's grievance likewise adequately raised the issue of his medical concerns. The court recognizes that plaintiff's grievance devotes just a single sentence to this matter; furthermore, the grievance emphasized plaintiff's inability to maintain a standing position due to a metal rod in his leg, while he alleges in his complaint that he was suffering from dizziness, headaches, back pain, and overly tight handcuffs. It remains to be seen whether plaintiff engaged in hyperbole in drafting his complaint. But the grievance did alert prison officials that plaintiff had a disability or medical problem at the time of the shakedown, that he told at least one tactical team officer, and that the officer(s) ignored his medical condition. Viewing the evidence in the light most favorable to plaintiff, the court concludes that the grievance included sufficient detail to "give prison administrators an opportunity to address a shortcoming" as to plaintiff's need for a medical accommodation of some sort. *White v. Bass*, No. 10 CV 1662, 2011 WL 1303393, at *6 (N.D. Ill. Mar. 31, 2011) (Dow, J.) (quoting *Glick v. Walker,* 385 F. App'x 579, 2010 WL 2775864, at *3 (7th Cir. Jul. 13, 2010) (unpublished opinion)); *but see Stites v. Mahoney*, 594 F. App'x 303, 304-05 (7th Cir. 2015) (affirming dismissal for failure to exhaust where the one grievance the prisoner appealed, and therefore exhausted, had nothing to do with the federal lawsuit he then initiated). Plaintiff's grievances fulfilled the intent of the exhaustion process.

For the foregoing reasons, the court denies defendants' motion for partial summary judgment on grounds of non-exhaustion. Plaintiff may proceed to the merits on all three of his basic claims.

## V. Conclusion

In sum, defendants' motion for summary judgment [37] is denied.

Date: 5/08/2017        ENTER:

_____
United States District Court Judge

Notices mailed by Judicial Staff. (LC)

6