IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| DARRYL FLEMING,<br><br>    Plaintiff,<br><br>v.<br><br>NEDRA CHANDLER; MARK ANDRES; JOSH ANDREWS; JOSHUA ALBERTS; DANIEL ARTL; MICHAEL ATCHISON; JOHN BALDWIN; QUENTIN BAILEY; EDDIE BAITY; RUSSELL BAKER; JASON BEARD; SHANE BOYSON; RODNEY BRADY; SCOTT BUZLAFF; BRETT CARNAHAN; LUKE CUNNINGHAM; MICHAEL EVANS; DUSTIN FORD; TJ FRANCIS; ANN GANGER; S.A. GODINEZ; DAVID GOMEZ; RICHARD GRAVES; PETER GREEN III; JOSH GRUNDER; DUSTIN HAGER; TRENT HANRAHAN; JASON HARLAN; LEROY HART; KELLY HERRICK; JOSHUA HORTON; LEONTA JACKSON; BRADY JACOBS; TOMASZ JANKOWSKI; CHAD JENKINS; ALEX JOHNSON; CRAIG JONES; NICK JONES; NICHOLAS KAYS; PAUL LAWSON; TYRUS LAZARD; BRIAN LEDBETTER; COLTON LOVE; NICHOLAS LUNON; GREG MANZANO; RAUL MARTINEZ; MARTIN MATHERLY; SCOTT MEYER; TRAVIS MOORE; MARK NEWMAN; SCOTT NODINE; KENNETH NUSHARDT; JEFF OELBERG; PHIL OSBORN; JOSHUA PHARES; JOSE PRADO SR.; TIM PRATER; CHRIS RENTERIA; LOUIS SAPIA; JEAN SOLBERG; NATE SPENCE; JACOB STARK; BEN STERCHI; WALDEMAR STRUGALA; CHRISTOPHER TERRY; DONALD THOMAS; JAMES THOMAS; SHAWN THRUSH; CHRIS TUTTLE; ADAM WALSH; LESLIE WARDEN; DALE WEIS; JASON WEYMOUTH; RYAN WOODS; ROD WORKMAN; DENNIS WOZNIAK; KEN YINGLING; JOSEPH YURKOVICH; CHRIS ZIERMAN; UNKNOWN MEMBERS OF TACTICAL TEAM KNOWN AS "ORANGE CRUSH"; and UNKNOWN SUPERVISORS,<br><br>    Defendants. | Case No. 16-cv-50074<br><br>Hon. Philip G. Reinhard<br><br>Hon. Iain D. Johnston<br><br>JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

Plaintiff Darryl Fleming, by and through counsel, complains against defendants Nedra Chandler; Mark Andres; Josh Andrews; Joshua Alberts; Daniel Artl; Michael Atchison; John Baldwin; Quentin Bailey; Eddie Baity; Russell Baker; Jason Beard; Shane Boyson; Rodney Brady; Scott Buzlaff; Brett Carnahan; Luke Cunningham; Michael Evans; Dustin Ford; TJ Francis; Ann Ganger; S.A. Godinez; David Gomez; Richard Graves; Peter Green III; Josh Grunder; Dustin Hager; Trent Hanrahan; Jason Harlan; LeRoy Hart; Kelly Herrick; Joshua Horton; Leonta Jackson; Brady Jacobs; Tomasz Jankowski; Chad Jenkins; Alex Johnson; Craig Jones; Nick Jones; Nicholas Kays; Paul Lawson; Tyrus Lazard; Brian Ledbetter; Colton Love; Nicholas Lunon; Greg Manzano; Raul Martinez; Martin Matherly; Scott Meyer; Travis Moore; Mark Newman; Scott Nodine; Kenneth Nushardt; Jeff Oelberg; Phil Osborn; Joshua Phares; Jose Prado Sr.; Tim Prater; Chris Renteria; Louis Sapia; Jean Solberg; Nate Spence; Jacob Stark; Ben Sterchi; Waldemar Strugala; Christopher Terry; Donald Thomas; James Thomas; Shawn Thrush; Chris Tuttle; Adam Walsh; Leslie Warden; Dale Weis; Jason Weymouth; Ryan Woods; Rod Workman; Dennis Wozniak; Ken Yingling; Joseph Yurkovich; Chris Zierman; Unknown Members of Tactical Team Known as "Orange Crush"; and Unknown Supervisors, as follows:

### Introduction

1.  In late April 2014, on a cold day, a tactical team known as "Orange Crush" conducted a shakedown of cells at Dixon Correctional Center ("Dixon"), an Illinois Department of Corrections ("IDOC") prison in Dixon, Illinois. Rather than carry out a legitimate security procedure, however, Defendants threatened, sexually humiliated, and otherwise abused Mr. Fleming and hundreds of other prisoners, destroyed his property, and gratuitously inflicted punishment for the sole purpose of causing humiliation and needless pain. Mr. Fleming seeks

damages for his injuries, and an injunction prohibiting Defendants from inflicting such abuse during future searches.

2. For example, Mr. Fleming and other prisoners at Dixon were subject to: a humiliating strip search in front of female officers; orders to touch their genitals and then use their unwashed hands to open their mouths; painfully tight handcuffing with their palms outward; orders to march from their housing units to another building at Dixon with their heads on the backs of the prisoners ahead of them in line so that one man's genitals were in direct contact with the next man's buttocks; attacks by Defendant Orange Crush Officers when prisoners broke that formation; and orders to stand in a stress position for several hours. Throughout the shakedown, Defendant Orange Crush Officers hurled epithets at the prisoners, chanted "punish the inmate," and told them this was punishment for their sins.

3. The shakedown was the direct result of unconstitutional policies and practices in place at the IDOC pursuant to which Orange Crush conducted a series of shakedowns at various IDOC prisons, not for any legitimate penological purpose, but for the purpose of inflicting pain and humiliation on prisoners entrusted to its care.

4. The painful and humiliating shakedown inflicted physical injuries on Mr. Fleming—including headache, dizziness, wrist pain, lower back pain, and pain in Mr. Fleming's right leg—and emotional injuries—including severe embarrassment, fear, stress, trauma, and humiliation.

## Jurisdiction and Venue

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

6. Venue is proper under 28 U.S.C. § 1391(b). On information and belief, one or more Defendants reside in this judicial district, and a substantial portion of the events giving rise

to the claims asserted herein occurred within this district.

## Parties

7.      Plaintiff Darryl Fleming is a prisoner in the custody of the IDOC. At all times relevant to the events at issue in this case, Mr. Fleming was housed at Dixon. Mr. Fleming is African American.

8.      Defendant Correctional Officers Mark Andres; Josh Andrews; Joshua Alberts; Quentin Bailey; Eddie Baity; Jason Beard; Shane Boyson; Brett Carnahan; Luke Cunningham; Michael Evans; Dustin Ford; Ann Ganger; Richard Graves; Peter Green III; Dustin Hager; Trent Hanrahan; Jason Harlan; LeRoy Hart; Kelly Herrick; Joshua Horton; Brady Jacobs; Tomasz Jankowski; Chad Jenkins; Alex Johnson; Nick Jones; Nicholas Kays; Tyrus Lazard; Brian Ledbetter; Colton Love; Nicholas Lunon; Greg Manzano; Raul Martinez; Martin Matherly; Scott Meyer; Scott Nodine; Kenneth Nushardt; Phil Osborn; Joshua Phares; Tim Prater; Chris Renteria; Louis Sapia; Nate Spence; Jacob Stark; Ben Sterchi; Waldemar Strugala; Christopher Terry; Donald Thomas; James Thomas; Shawn Thrush; Chris Tuttle; Adam Walsh; Dale Weis; Jason Weymouth; Ryan Woods; Rod Workman; Dennis Wozniak; Ken Yingling; and Chris Zierman (together, "Defendant Orange Crush Officers") were, at the time of the events at issue in this complaint, IDOC employees; members of the IDOC tactical team commonly referred to as "Orange Crush"; and participants in the shakedowns that occurred at Dixon. At all times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with the IDOC.

9.      Defendants Daniel Artl, a member of IDOC's statewide Tactical Response Team; Sgt. Russell Baker; Team Leader Scott Buzlaff; Commander TJ Francis; Team Leader Josh Grunder; Lt. Craig Jones; Sgt. Paul Lawson; Lt. Travis Moore; Lt. Mark Newman; Sgt. Jeff

Oelberg; Sgt. Jose Prado Sr.; Lt. Jean Solberg; and Sgt. Leslie Warden were, at the time of the events at issue in this complaint, IDOC supervisors; members or supervisors of the Orange Crush team; and participants in the shakedowns that occurred at Dixon. At all times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with the IDOC.

10. Defendants Unknown Members of Tactical Team Known as "Orange Crush" are employees of the IDOC and members of the Orange Crush team. Upon information and belief, they travel from facility to facility within the IDOC conducting shakedowns and other special procedures at IDOC facilities. At all times relevant to the events at issue in this case, Defendants Unknown Members of Tactical Team Known as "Orange Crush" were acting under color of law and within the scope of their employment with the IDOC.

11. At the time of events the at issue in this case, Defendant Nedra Chandler was the Warden at Dixon, and an employee of the IDOC. On information and belief, Chandler was responsible for supervising the shakedown at Dixon and was a supervisor in the operations chain of command during the shakedown. At all times relevant to the events at issue in this case, Chandler was acting under color of law and within the scope of her employment with the IDOC.

12. At the time of the events at issue in this case, Defendant Leonta Jackson was the Assistant Warden of Operations at Dixon and an employee of the IDOC. On information and belief, Defendant Jackson was responsible for supervising the shakedown at Dixon and was a supervisor in the operations chain of command during the shakedown. At all times relevant to the events at issue in this case, Defendant Jackson was acting under color of law and within the scope of her employment with the IDOC.

13. At the time of events at issue in this case, Defendant Rodney Brady was the

Northern Region Tactical Commander for the IDOC and an employee of the IDOC. On information and belief, Defendant Brady was responsible for supervising the shakedown at Dixon and a supervisor in the operations chain of command during the shakedown. At all times relevant to the events at issue in this case, Defendant Brady was acting under color of law and within the scope of his employment with the IDOC.

14. Defendant Joseph Yurkovich is the former Chief of Operations for the IDOC, and was responsible for supervising all Orange Crush tactical teams and implementing, overseeing, and supervising policies and practices executed by Orange Crush members. Defendant Yurkovich acted as Command Staff with supervisory responsibilities during the shakedown. At all times relevant to the events at issue in this case, Defendant Yurkovich was acting under color of law and within the scope of his employment with the IDOC.

15. Defendant Michael Atchison is the former Deputy Chief of Operations for the IDOC, and acted as Command Staff with supervisory responsibilities during the shakedown. At all times relevant to the events at issue in this case, Defendant Atchison was acting under color of law and within the scope of his employment with the IDOC.

16. At all times relevant to this case, Defendant David Gomez was the Northern Region Deputy Director for the IDOC, and acted as Command Staff with supervisory responsibilities during the shakedown. At all times relevant to the events at issue in this case, Defendant Gomez was acting under color of law and within the scope of his employment with the IDOC.

17. Defendant Unknown Supervisors are the unknown supervisors responsible for overseeing various aspects of the shakedown described in this pleading. Defendant Unknown Supervisors include all supervisors in the operations chain of command during the shakedown;

all supervisors acting as Command Staff during the shakedown; and all IDOC regional administrators responsible for overseeing or supervising any aspect of the shakedown described in this pleading.

18. Defendant S.A. Godinez is the former Director of the IDOC. He has been sued in his individual capacity. At the time of events at issue in this case, Defendant Godinez was an employee of the IDOC and acted under color of law and within the scope of his employment.

19. Defendant John Baldwin is the Acting Director of the IDOC. He is sued in his official capacity as Acting Director of the IDOC. Plaintiff asserts only claims for injunctive relief against Defendant Baldwin. As Acting Director of the IDOC, Defendant Baldwin acts under color of law.

**Background Facts**

20. In late April and early May 2014, Dixon was put on lockdown for approximately 15 days. During the lockdown, Defendant Orange Crush Officers conducted a shakedown of each house at the facility.

21. On April 21, 2014, Defendant Orange Crush Officers conducted a shakedown of Housing Unit 59, in which Mr. Fleming then resided.

22. Upon entering Housing Unit 59, Defendant Orange Crush Officers yelled loudly "get the fuck up!", and began making loud "whooping" noises while hitting their batons on the walls, tables, doors, and railings in the wing.

23. Defendant Orange Crush Officers instructed Mr. Fleming and the other men in Housing Unit 59 to keep their heads down and not to look at the officers' faces, and threatened the men with physical violence, segregation, withholding of medical care, and transfer to a maximum security facility if they did not comply. Two Defendant Orange Crush Officers then

7

lined up in front of each cell.

24. The Defendant Orange Crush Officers took affirmative steps to conceal their identities from Mr. Fleming and the other prisoners at Dixon, including concealing their faces with face shields and failing to wear nametags or another form of identification that would be visible to the prisoners.

25. The Defendant Orange Crush Officers who lined up in front of Mr. Fleming's cell did not identify themselves, but Mr. Fleming now believes the officers were Michael Evans and Tomasz Jankowski.

26. After approaching Mr. Fleming's cell, the Evans and Jankowski yelled "get asshole naked!" Once Mr. Fleming was undressed, the Defendant Orange Crush Officers rushed into his cell and ordered him to bend over with his back turned to the officers; spread his buttocks; and lift each foot off the ground. The Defendant Orange Crush Officers then ordered Mr. Fleming to face them, and to lift his genitals. Next, the Defendant Orange Crush Officers ordered Mr. Fleming to open his mouth using the same hands he had just used to touch his genitals and buttocks, threatening Mr. Fleming with segregation if he did not comply. Mr. Fleming's two cellmates were present in the cell during his strip search.

27. At least three Defendants present in the housing unit during Mr. Fleming's strip search, including Ann Ganger and Jean Solberg, were female. The women witnessed Mr. Fleming's and other male inmates' strip searches.

28. When the Defendant Orange Crush Officers finished strip searching Mr. Fleming, they ordered him to get dressed in pants, shirt, and shoes. The Defendant Orange Crush Officers told Mr. Fleming he could not wear any underwear, and denied his request to wear his medically necessary knee brace and back brace.

8

29. Once all the prisoners residing in Housing Unit 59 had been strip searched, Defendant Orange Crush Officers ordered the men to face the wall (with their backs to the officers) and to "keep [their] fucking heads down!" Any prisoner who looked at the officers was slammed into the wall and told to "put [his] fucking head down!"

30. Defendant Orange Crush Officers then handcuffed Mr. Fleming and the other men in a particularly painful way: with the palms of their hands facing outward and their thumbs pointed up to the sky. The handcuffs were extremely tight, injuring Mr. Fleming's wrists, and eliciting complaints from him and other prisoners. Defendant Orange Crush Officers responded to Mr. Fleming's complaints by telling him to "shut the fuck up!" and "keep [his] fucking head down!"; and they threatened him with segregation if he did not comply.

31. Mr. Fleming and the other men were ordered to line up and told to keep their heads down. Defendant Orange Crush Officers then lined up next to the prisoners, hitting their batons in their hands, and chanting "punish the inmate." This went on for several minutes.

32. Once the chanting stopped, Defendant Orange Crush Officers grabbed the back of each prisoner's head and slammed it violently into the back of the prisoner ahead of him in line. Defendant Orange Crush Officers ordered the prisoners to stand so that one man's genitals were in direct contact with the buttocks of the man ahead of him in line—a position referred to by Defendant Orange Crush Officers as "Nuts to Butts."

33. Defendant Orange Crush Officers then shoved their batons between each prisoner's legs and jerked upwards, forcing the prisoner to straighten his legs while keeping his back bent over at a 90-degree angle onto the prisoner in front of him. This had the effect of forcing the men to place their genitals directly against the buttocks of the men in front of them. The officers then ordered the prisoners, using several epithets, to march in that formation from

9

their housing wing to the gym at the facility. As the men began marching, the officers yelled that they didn't "want to see any fucking daylight" between any of the prisoners in line.

34. The march from the housing wing to the gym was long and painful. Each time a prisoner's head came off the back of the prisoner in front of him, officers responded by slamming the prisoner's head into the back of the prisoner in front of him. Some prisoners were violently yanked out of the line, choked, and pulled to the ground while other officers jabbed them in their backs with batons. Each time this occurred, the line would stop moving. The frequent starts and stops of the procession, as well as the inherent difficulty of maintaining perfect contact with each other, forced several prisoners to break contact with the prisoners in front of them, causing them to be attacked by the officers. Moreover, the prisoners were not permitted to wear any outerwear, and were therefore exposed to the cold weather throughout the march.

35. When the procession of prisoners arrived at the gym, Defendant Orange Crush Officers ordered them to stand facing the wall with their heads down. They remained handcuffed. Some officers then left the gym. Defendant Orange Crush Officers Mark Andres, Trent Hanrahan, Chad Jenkins, Scott Meyer, and others, however, remained in the gym with the prisoners.

36. The prisoners remained standing in this stress position for several hours. During that time, Defendant Hanrahan yelled at the prisoners: "This is punishment for all your sins!" He ordered the prisoners not to ask for medical attention or water because none would be provided, and not to ask to use the bathroom because the request would be denied. He further told the prisoners that if their handcuffs were too tight, they would have to "be a man and take it or get dragged to seg[regation]!"

10

37. At one point, Mr. Fleming raised his hand to indicate that he required medical attention. Defendant Orange Crush Officers Hanrahan, Meyer, and Jenkins came behind Mr. Fleming and asked "what the fuck do you want?" Mr. Fleming explained that he has a metal rod in his right leg and therefore feared he would fall if forced to continue standing in the stress position. Mr. Fleming told the officers he was also experiencing back pain, a headache, dizziness, and pain and loss of circulation in his wrists from the tight handcuffs. Mr. Fleming asked permission to sit in a chair facing the wall and requested that the officers consult with prison medical staff to verify his medical situation.

38. The Defendant Orange Crush Officers refused to loosen Mr. Fleming's handcuffs or provide a chair, telling Mr. Fleming he was "too young for a chair." The Defendant Orange Crush Officers threatened Mr. Fleming with violence, segregation, and denial of medical care if Mr. Fleming continued to complain.

39. When Mr. Fleming was finally permitted to use the bathroom, Defendant Orange Crush Officers Chad Jenkins and Scott Meyer refused Mr. Fleming's request to remove or loosen his handcuffs. Mr. Fleming was therefore forced to defecate while handcuffed, which caused him to contaminate his body, hands, and pants with feces (as he had previously been forbidden from wearing underwear). Jenkins and Meyers subsequently refused Mr. Fleming's request for soap to wash his hands, instead forcing Mr. Fleming to return to the gym and resume standing in the stress position without properly washing his hands and in his soiled clothing. Mr. Fleming later learned that Defendant Orange Crush Officers had agreed to remove the handcuffs from several white inmates so they could use the bathroom.

40. After several hours, the other Defendant Orange Crush Officers returned. They lined up the prisoners in the same formation as before, and again slammed their heads into the

backs of the prisoners in front of them. They again ordered the prisoners to march in that formation back to their housing wing. Just as before, if a prisoner broke the line by lifting his head off the back of the person in front of him, Defendant Orange Crush Officers reacted with violence.

41. Defendant Orange Crush Officers laughed at and taunted the prisoners throughout the entire march to and from the gym.

42. When the prisoners at last returned to their housing wing, Mr. Fleming found his cell had been "tossed." Though he did not know it at the time, Mr. Fleming now believes his cell was tossed by Defendant Orange Crush Officers Michael Evans and Tomasz Jankowski. Mr. Fleming, like many other prisoners, found that non-contraband items had been taken, including legal documents and property he had legitimately purchased from the commissary at the facility. Although IDOC policies require staff to complete "shakedown slips" to document any property taken from a prisoner, Mr. Fleming did not receive a shakedown slip. Upon information and belief, this was done intentionally, as policy, to conceal the identity of Defendant Orange Crush Officers who had participated in the shakedown.

43. Mr. Fleming suffered physical injuries as a result of the shakedown, including severe headache, dizziness, lightheadedness, blurred vision, and severe pain in his right leg, neck, and lower back caused by the march and stress test. Mr. Fleming complained about these injuries to the officers during the shakedown and march, and upon return to his cell. But he was denied medical attention. Officers instead laughed at him and told him to "write a grievance."

44. On information and belief, Defendant Orange Crush Officers executed their unconstitutional and cruel shakedown procedures in April and May 2014 at several other IDOC facilities pursuant to a policy or practice implemented, overseen, and encouraged by IDOC

supervisors, including Defendants Godinez, Yurkovich, and Chandler.

45.     To this day, Mr. Fleming and other IDOC prisoners are periodically subjected to shakedown procedures like the ones described in this pleading. Despite several prisoners' repeated requests that Defendants stop the abuse, Defendants continue to maintain and encourage the above-described policy or practice.

## COUNT I
### 42 U.S.C. § 1983 – Cruel & Unusual Punishment (Eighth Amendment)

46.     Mr. Fleming incorporates each paragraph of this complaint as if fully restated here.

47.     As described more fully above, Defendants inflicted unnecessary physical and emotional pain and suffering on Mr. Fleming. They did so intentionally, wantonly, and/or with malice.

48.     Alternatively, Defendants knew the risk of harm that their misconduct posed to Mr. Fleming and nevertheless acted with deliberate indifference in executing the shakedown at Dixon.

49.     As a result of Defendants' unjustified and unconstitutional conduct, Mr. Fleming suffered pain, emotional distress, and injuries.

50.     The misconduct described in this Count was undertaken intentionally, with malice, and/or with reckless indifference to Mr. Fleming's rights.

51.     Mr. Fleming's injuries were proximately caused by the policies and practices of the IDOC Defendants.

52.     On information and belief, Defendant Orange Crush Officers executed their unconstitutional and cruel shakedown at Dixon pursuant to a policy or practice implemented and overseen by Defendant Yurkovich and other IDOC supervisors regarding shakedowns at IDOC

13

facilities. Accordingly, Defendant Yurkovich, who was responsible for supervision and oversight of Orange Crush, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of Defendant Orange Crush Officers, and failed to adequately punish and discipline prior instances of similar misconduct. Defendant Yurkovich violated Mr. Fleming's rights by maintaining and implementing policies and practices that were the moving force driving the foregoing constitutional violations.

53. On information and belief, Defendants Godinez, Chandler, and Yurkovich had notice of widespread policies and practices of Defendant Orange Crush Officers and other members of Orange Crush, pursuant to which prisoners were subjected to unconstitutional and tortious acts of violence and humiliation, as described more fully above. Despite knowledge of these problematic policies and practices, these Defendants did nothing to ensure that prisoners at Dixon were treated humanely and in accordance with the rights afforded to them by the United States Constitution. These widespread policies and practices were allowed to flourish because Defendants Godinez, Chandler, and Yurkovich directly encouraged the very type of misconduct at issue in this case, and failed to provide adequate training and supervision of Orange Crush team members. In this way, Defendants Godinez, Chandler, and Yurkovich violated Mr. Fleming's rights by maintaining and implementing policies and practices that were the moving force driving the foregoing constitutional violations.

54. The above-described policies and practices were able to exist and thrive because Defendants Godinez, Chandler, and Yurkovich were deliberately indifferent to the problem, thereby effectively ratifying it.

55. Mr. Fleming's injuries were caused by employees of the IDOC, including but not limited to the individually named Defendants, who acted pursuant to the foregoing policies and

practices in engaging in the misconduct described in this Count.

56. Defendants continue to this day to perform shakedowns at Dixon using the unconstitutional and cruel methods described more fully above. Accordingly, Mr. Fleming seeks injunctive relief to stop the continuing constitutional violation.

57. Mr. Fleming also seeks actual and punitive damages.

## COUNT II
## 42 U.S.C. § 1983 – Denial of Medical Treatment (Eighth Amendment)

58. Mr. Fleming incorporates each paragraph of this complaint as if fully restated here.

59. As described more fully above, during the shakedown, Defendant Orange Crush Officers had notice of Mr. Fleming's medical needs and the seriousness of those medical needs, and knew the risk of harm to Mr. Fleming if he did not receive appropriate medical care. Despite that knowledge, Defendant Orange Crush Officers failed to provide him with a chair, proper medical care, or access to medical care, in violation of the Eighth Amendment to the United States Constitution.

60. As a result of Defendant Orange Crush Officers' unjustified and unconstitutional conduct, Mr. Fleming experienced pain, suffering, emotional distress, and injury.

61. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and/or with reckless indifference to Mr. Fleming's rights.

62. Alternatively, Defendant Orange Crush Officers were deliberately indifferent to Mr. Fleming's objectively serious medical needs, and their actions were undertaken intentionally, with malice, and/or with reckless indifference to Mr. Fleming's rights.

63. Defendant Orange Crush Officers' conduct was the proximate cause of Mr. Fleming's injuries.

64. Mr. Fleming seeks actual and punitive damages for Defendants' violation of his constitutional rights.

## COUNT III
**42 U.S.C. § 1983 – Violation of Equal Protection Clause (Fourteenth Amendment)**

65. Mr. Fleming incorporates each paragraph of this complaint as if fully restated here.

66. As described more fully above, Defendant Orange Crush Officers, acting under color of law, intentionally and without justification, refused to remove Mr. Fleming's handcuffs so that he could use the bathroom, while agreeing to remove the handcuffs of similarly-situated white inmates so that those inmates could use the bathroom. Through these actions, Defendant Orange Crush Officers singled out Mr. Fleming as an African American inmate and discriminated against him because he is African American.

67. Defendants' actions deprived Mr. Fleming of his right to equal protection under the law, in violation of the Fourteenth Amendment to the United States Constitution.

68. As a direct and proximate result of Defendants' actions alleged in this Count, Mr. Fleming suffered damages.

69. Mr. Fleming seeks actual and punitive damages for Defendants' violation of his constitutional rights.

## COUNT IV
**42 U.S.C. § 1983 – Conspiracy**

70. Mr. Fleming incorporates each paragraph of this complaint as if fully restated here.

71. Defendants reached an agreement among themselves to deprive the prisoners housed at Dixon of their constitutional rights and to protect one another from liability for

16

depriving the prisoners of their rights, as described in this complaint.

72. In furtherance of the conspiracy, each co-conspirator committed overt acts and was an otherwise willful participant in joint activity.

73. The misconduct described in this Count was undertaken intentionally, with malice, and/or with reckless indifference to Mr. Fleming's rights.

74. As a direct and proximate result of the illicit prior agreement referenced above, Mr. Fleming's rights were violated and he suffered injuries, including pain, suffering, and emotional distress.

75. These injuries were caused by IDOC employees, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices described above.

76. Defendants continue to this day to conspire to deprive Mr. Fleming of his constitutional rights and to protect one another from liability for the deprivation of those rights, as described in this complaint. Accordingly, Mr. Fleming seeks injunctive relief to stop the continuing constitutional violation.

77. Mr. Fleming also seeks actual and punitive damages.

## COUNT V
### 42 U.S.C. § 1983 – Failure to Intervene (Eighth Amendment)

78. Mr. Fleming incorporates each paragraph of this complaint as if fully restated here.

79. As described more fully above, Defendants each had a reasonable opportunity to prevent the violation of Mr. Fleming's constitutional rights had they been so inclined. They failed to do so.

80. Defendants' actions were undertaken intentionally, with malice, and/or with

17

reckless indifference to Mr. Fleming's rights.

81. As a direct and proximate result of Defendants' misconduct, Mr. Fleming's rights were violated and he suffered injuries, including pain, suffering, and emotional distress.

82. Mr. Fleming's injuries were caused by IDOC employees, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices described more fully above.

83. Mr. Fleming seeks actual and punitive damages for Defendants' violation of his constitutional rights.

## COUNT VI
### Intentional Infliction of Emotional Distress

84. Mr. Fleming incorporates each paragraph of this complaint as if fully restated here.

85. In the manner described more fully above, Defendants engaged in extreme and outrageous conduct. Defendants' actions were rooted in an abuse of power or authority.

86. Defendants' actions as set forth above were undertaken with intent or knowledge that there was a high probability the conduct would inflict severe emotional distress, and with reckless disregard of that probability.

87. Defendants' actions as set forth above were undertaken intentionally, with malice, and/or with reckless indifference to Mr. Fleming's rights.

88. Defendants undertook the misconduct described in this Count within the scope of their employment.

89. As a direct and proximate result of this misconduct, Mr. Fleming experienced injuries, severe emotional distress, and suffering.

WHEREFORE, Plaintiff Darryl Fleming respectfully requests this Court enter a judgment in his favor and against Defendants awarding compensatory damages, punitive damages, injunctive relief, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff Darryl Fleming hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: January 26, 2018

Respectfully submitted,

DARRYL FLEMING

By: */s/ Alison R. Leff*
    One of His Attorneys

Timothy E. Kapshandy
Alison R. Leff
SIDLEY AUSTIN LLP
1 S. Dearborn St.
Chicago, IL 60603
(312) 853-7000
tkapshandy@sidley.com
aleff@sidley.com

*Attorneys for Plaintiff*